IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STRATTON CONOVER, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH F. MAZURKIEWICZ, et al., | : | NO. 12-1594 |
| Respondents. | | |

## REPORT AND RECOMMENDATION

LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE

Pending before this court is a petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. §2254, by a petitioner currently incarcerated at State Correctional Institution Greensburg, in Greensburg, Pennsylvania. For the reasons which follow, it is recommended that the petition be DENIED.

I. PROCEDURAL HISTORY

Petitioner is serving a life sentence for the conviction of two unrelated third degree murders that occurred within two weeks of each other in May 1996. In this petition, petitioner seeks to challenge the first conviction, the murder of James Hart.[1]

On May 7, 1996, petitioner fatally shot James Hart twice on a sidewalk, following

---

[1] Worth noting so as to avoid confusion, the docket numbers for petitioner's two third degree murder convictions are similar. Petitioner's first murder conviction was docketed as CP 9701-0577-1/1. Petitioner's second murder conviction was docketed as CP 9701-0557-1/1. Thus, there is one digit different in the docket numbers of petitioner's murder cases. Petitioner filed a petition for habeas relief regarding the second conviction. (Civil Action No. 10-6031). The undersigned's report and recommendation recommending denial of the petition was approved by the Honorable Petrese B. Tucker on August 22, 2011.

1

an argument between the two. Petitioner fled with his friends in a car and was stopped later that day for a traffic violation. The officers discovered a gun, charged petitioner with weapons violations, and released him. On December 27, 1996, after police matched the specifications of the bullet recovered from Mr. Hart's body with those of the gun recovered from petitioner in May, petitioner was arrested and charged with murder. Later that day, petitioner provided a statement to police detectives confessing to the murder of Mr. Hart.

On January 23, 1998, following a jury trial before the Honorable John J. Poserina, Jr., of the Court of Common Pleas of Philadelphia County, the petitioner was found guilty of third degree murder and related offenses for the Hart murder. On April 20, 1998, petitioner was sentenced to eleven (11) to twenty-two (22) years imprisonment.

Petitioner was tried for the murder of another man, Tyeine Williams, in February 1999, and convicted of third degree murder of Williams, aggravated assault of John Bryant, possession of an instrument of crime, and reckless endangerment of another person. On March 25, 1999, the court sentenced petitioner to life imprisonment for the murder conviction, pursuant to 42 Pa. C.S. § 9715(a), which imposes a life sentence for third-degree murder where one has previously been convicted of murder or voluntary manslaughter.

Petitioner filed a direct appeal to the Superior Court with the assistance of new counsel, Salvatore C. Adamo, Esq. Petitioner raised claims concerning the first and second murder trials. Although not consolidated for appeal the court addressed both murder convictions together. On August 13, 2002, the court affirmed the judgment of sentence.

Petitioner sought allowance of appeal to the Pennsylvania Supreme Court. The court denied review on December 17, 2002.

On March 11, 2003, petitioner filed two petitions for post conviction relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq* – one petition challenging the first murder conviction, and the other challenging the second murder conviction. At least five different attorneys were appointed and each filed a Finley no merit letter requesting withdrawal from the case. On September 24, 2009, the PCRA court dismissed the PCRA petition pertaining to the Hart murder, the conviction at issue in this habeas petition. Petitioner appealed this ruling to the Superior Court. On September 9, 2009, the Superior Court affirmed the PCRA court's dismissal.

Thereafter, petitioner sought leave to file a late petition for allowance of appeal to the Pennsylvania Supreme Court. (559 EAL 2010). On May 27, 2011, the Pennsylvania Supreme Court denied *allocatur*.

Petitioner filed the instant habeas petition on March 25, 2012.[2] On April 11, 2012, Judge Tucker dismissed the petition as an unauthorized second or successive petition. (Doc. No. 2). Petitioner subsequently filed a Motion to Vacate, wherein petitioner explained that he had been convicted of two separate murders and his previous habeas petitions in this court concerned the second murder conviction (CP 9701-0557-1/1), and not the first murder conviction (CP 9701-0577-1/1). On May 30, 2012, Judge Tucker vacated her prior order and referred the case to the undersigned for review. (Doc. No. 8).

---

[2]Although the habeas petition was not docketed by this court until March 29, 2012, (Doc. No. 1), the "mailbox rule" applies. Under the "mailbox rule," a *pro se* prisoner's habeas petition is considered filed on the date the prisoner delivers the complaint to prison authorities for filing. See Houston v. Lack, 487 U.S. 266, 276 (1988). Here, petitioner signed his petition on March 25, 2012, so we will presume that he delivered it to authorities for filing on that date as well.

3

In his habeas petition, petitioner claims the following:

1. The trial court erred in failing to suppress the confession, as the confession and Miranda Rights answers were fabricated by Detective Lubiejewski;

2. The evidence was insufficient to prove third degree murder, as malice was not proven beyond a reasonable doubt; and

3. The trial court committed plain error when it allowed the jury to take a copy of petitioner's confession in the deliberation room.

Petitioner later filed a Motion to Amend his habeas petition, adding the following claims:

4. The verdict was against the weight of the evidence.

5. Trial counsel was ineffective for failing to raise the verdict was against the weight of the evidence.

Respondents contend that all of the claims are either procedurally defaulted, lack merit, or should not be considered because the amended petition was filed too late.[3]

II. STANDARD OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for Writ of Habeas Corpus from a state court judgment bears a significant burden. Section 104 of the AEDPA imparts a presumption of correctness to the state

---

[3]The one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to new section 2254 petitions as well as amendments to existing section 2254 petitions. United States v. Thomas, 221 F.3d 430, 431 (3d Cir. 2000). As Respondents state, the habeas limitations period in this case began to run on May 27, 2011, when the Pennsylvania Supreme Court denied review of petitioner's PCRA petition. Petitioner had one year from that date to file a habeas petition and any amendments thereto. Petitioner filed his habeas petition on March 25, 2012, but did not file his amended petition until August 14, 2012. Although the amended petition appears three months late, Judge Tucker initially dismissed the case on April 11, 2012, and only vacated her order dismissing the case on May 30, 2012. In light of this matter's procedural history in this court, it is fair that we consider the claims petitioner added in his amended petition. Petitioner's Motion to File an Amended Petition shall be granted in a separate order addressing other outstanding motions.

4

court's determination of factual issues - a presumption that petitioner can only rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (1994). The statute also grants significant deference to legal conclusions announced by the state court as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court, in Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1518-19 (2000), interpreted the standards established by the AEDPA regarding the deference to be accorded state court legal decisions, and more clearly defined the two-part analysis set forth in the statute. Under the first part of the review, the federal habeas court must determine whether the state court decision was "contrary to" the "clearly established federal law, as determined by the Supreme Court of the United States." Williams, 529 U.S. at 404. As defined by Justice O'Connor, writing for the majority of the Court on this issue, a state court decision can be contrary to Supreme Court precedent in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours [the Supreme Court]." Id. at 405. Justice

O'Connor explained, however, that this "contrary to" clause does not encompass the run-of-the-mill state court decisions "applying the correct legal rule from [Supreme Court] cases to the facts of the prisoner's case." Id. at 406.

To reach such "run-of-the-mill" cases, the Court turned to an interpretation of the "unreasonable application" clause of § 2254(d)(1). Id. at 407-08. It found that a state court decision can involve an unreasonable application of Supreme Court precedent: (1) "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. The Court specified, however, that under this clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Supreme Court has more recently stated, "The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 573, 127 S. Ct. 1933, 1939 (2007).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

Prior to the court's consideration of the merits of a claim, petitioner must comply with the exhaustion requirement of 28 U.S.C. 2254(b)(1)(A). Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). A petitioner is not deemed to

have exhausted the remedies available to him if he has a right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c) (1994); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059, reh'g denied, 490 U.S. 1076, 109 S. Ct. 2091 (1989). In other words, a petitioner must invoke "one complete round of the state's established appellate review process" in order to exhaust his remedies. O'Sullivan, 526 U.S. at 845. A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts. Santana v. Fenton, 685 F.2d 71, 73-74 (3rd Cir. 1982), cert. denied, 459 U.S. 1115, 103 S. Ct. 750 (1983). In the case of an unexhausted petition, the federal courts should dismiss without prejudice, otherwise they risk depriving the state courts of the "opportunity to correct their own errors, if any." Toulson v. Beyer, 987 F.2d 984, 989 (3rd Cir. 1993).

However, "[i]f [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred... there is procedural default for the purpose of federal habeas..." Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, reh'g denied, 501 U.S. 1277, 112 S. Ct. 27 (1991); McCandless v. Vaughn, 172 F.3d 255, 260 (3rd Cir. 1999). The procedural default barrier precludes federal courts from reviewing a state petitioner's federal claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729. "In the context of direct review of a state court judgment, [this] doctrine is jurisdictional... [b]ecause this Court has no power to review a state law determination that is

7

sufficient to support the judgment." Id. "In the absence of [the procedural default doctrine] in federal habeas, habeas petitioners would be able to avoid the exhaustion doctrine by defaulting their federal claims in state court." Id., at 732.

In the event a petitioner brings a claim which is procedurally defaulted, he is not entitled to federal habeas review unless he can show that his default should be excused. Such excuse is allowed only where the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

IV.  DISCUSSION

**Claim One**

In petitioner's first claim, petitioner argues that the trial court erred in allowing petitioner's confession and Miranda Rights answers into evidence. Petitioner claims that both the confession and Miranda Rights answers were totally fabricated by Detective Leon Lubiejewski. Petitioner further argues that while the suppression court granted petitioner a second suppression hearing so that petitioner could testify about the alleged fabrications, the court unreasonably decided not to overturn its earlier ruling.[4]

Respondents contend that this claim has not been exhausted in the state courts. More specifically, respondents argue that petitioner raised a similar, but not the same claim on direct appeal. Petitioner did not argue that his confession about the Hart murder was fabricated, but instead argued that the six-hour rule was violated and that he did not sign or initial each page

---

[4]The second suppression hearing occurred in February 1999 just prior to the second murder trial. The statement of which petitioner complains was admitted into evidence in both trials.

of the statement.

The trial court's opinion reflects that petitioner argued that his statement was taken in violation of the six-hour rule, and that petitioner did not sign or initial each page. The court found no merit to these claims. (Trial Ct. Op., 8/6/01, at 3-4). The Superior Court also reviewed this claim and found that both parts of the claim lacked merit. (Superior Ct. Op. 8/13/02, at 4). As to the violation of the six-hour rule, the court noted that petitioner failed to provide any specific information detailing the time frame within which the violation occurred or any references to the record to support his claim. (Superior Ct. Op. 8/13/02, at 4). As to the allegation that petitioner did not initial every page, the court found that petitioner signed each sheet of the statement and defense counsel acknowledged the statement was signed, thus, the court found it was voluntarily provided by petitioner. (Superior Ct. Op. 8/13/02, at 5). Petitioner did not make claims concerning his confession or Miranda Rights answers on collateral appeal.

Under the AEDPA's exhaustion requirement, a petitioner must demonstrate that "the claim brought in federal court [is] the substantial equivalent of that presented to the state courts. Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989). The claim petitioner raises in the instant habeas petition is factually different from the claim he raised to the state courts. Here, petitioner claims repeatedly that the statement he allegedly gave to police was "totally fabricated" by Detective Lubiejewski. While petitioner has ardently argued against the admissibility of the statement in his first and second murder trials, petitioner has lost this argument at every turn. Just prior to the second murder trial, petitioner asked the court to

reconsider its ruling admitting the statement into evidence. Petitioner testified at the hearing and claimed that he signed only blank pages, did not give Detective Lubiejewski any information, and the detective filled out the confession. (N.T. 2/8/99, at 13-22). Notably, though, petitioner did not seek review of the suppression court's ruling on direct or collateral appeal on the basis that the confession was fabricated.

This court cannot now review this claim where the appellate courts did not have the first opportunity to review the claim on the same bases. Accordingly, petitioner has not fully exhausted this claim. Because it is too late for petitioner to return to state court to timely raise this issue, claim one is procedurally defaulted. Further, petitioner has not established cause to excuse the procedural default, nor has he demonstrated that prejudice will occur if this court does not review this claim. We recommend that claim one be dismissed.

**Claim Two**

Next, petitioner argues that the evidence was insufficient to prove third degree murder because malice was not proven beyond a reasonable doubt. Petitioner claims that as he stepped out of his vehicle, Hart's two pit bulls ran up to petitioner barking. Petitioner further claims that the prosecution's eyewitnesses testified otherwise: that the dogs were leashed, that Hart and petitioner were arguing, and petitioner shot Hart as Hart walked away. Petitioner asserts that the medical examiner's office indicated to the jury that the entry wounds were from the front of the victim's body. Petitioner emphasizes that he did not testify and so the prosecution's direct evidence was the confession, which, while fabricated, still states that petitioner shot Hart when Hart's dogs lunged for petitioner and petitioner thought Hart was reaching for a weapon. Thus, petitioner concludes that the government's evidence negates an

inference of malice.

Petitioner raised this claim on direct appeal to the Superior Court. The court explained that petitioner's statement in the confession that he believed Hart was reaching for a weapon was the only evidence to support a self-defense claim, as petitioner did not testify at trial. (Superior Ct Op. 8/13/02, at 6). The court emphasized that, pursuant to state law, it was within the jury's purview to believe the testimony of an eyewitness who claims the victim was walking away when petitioner shot him twice in the back. (Superior Ct Op. 8/13/02, at 6).

The Supreme Court has recognized that due process requires that a person can be convicted of a crime only when every element of the offense has been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781 (1979). Where one has challenged the sufficiency of evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983)(quoting Jackson, 443 U.S. at 319)(emphasis in original). The above standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n. 16; see also Orban v. Vaughn, 123 F.3d 727, 731-32 (3d Cir. 1997)(applying Jackson standard to sufficiency of evidence claim for state conviction for aggravated assaulted), cert denied, 522 U.S. 1059 (1998). The AEDPA limits the federal court's review of a sufficiency of evidence claim in that relief can only be granted where the state court's decision was an objectively unreasonable application of the standard set forth in Jackson. See Williams, 529 U.S. at 407-08.

During direct examination, the government's witness, Mark Hilton, testified that

Hart crossed the street with his two dogs and passed in front of Jared's Lounge, where the dogs barked at three men standing in a driveway alongside the lounge. (N.T. 1/22/97, at 2.81-82). The three men and Hart exchanged words, and Hart walked away. (N.T. 1/22/97, at 2.83). As Hart walked away, one of the three men shot Hart, and as Hart started falling, the shooter struck Hart a second time. (N.T. 1/22/97, at 2.85-86).

On cross-examination, Hilton testified that he saw Hart walking with two pitbulls, unleased, and they walked in front of Jared's Lounge, where three males were standing in a driveway beside Jared's. (N.T. 1/22/97, at 2.92-93). The dogs reached the driveway first, did not go up to the men, but barked at them. (N.T. 1/22/97, at 2.94). On the sidewalk in front of Jared's, the three men and Hart exchanged words. (N.T. 1/22/97, at 2.95). After Hart walked away, one of the three men stepped forward from the other two men, drew his weapon, and fired it at Hart. (N.T. 1/22/97, at 2.97-98). Hart screamed, and Hilton then saw the man shoot a second time before Hart hit the ground. (N.T. 1/22/97, at 2.99-2.100).

The medical examiner's report states that Hart died of multiple gunshots–one on the left side of the head, just below the left eyebrow, and one in the right shoulder. (Doc. No. 23, Ptr's Exhibit 13). Petitioner asserts that this *must demonstrate* that Hart was facing petitioner at the time he was shot, thus emphasizing that petitioner acted out of self defense and that Hilton's account was wrong. During closing argument, defense counsel made a similar argument:

> Mr. Hilton says he was firing towards his back. We hear the medical examiner state the first wound hits him above the left eye and another one hits in the right shoulder, which tends to think, and you can infer, that maybe the decedent, James Hart was facing the person who shot him if he is shot above the eye and is shot in the right shoulder, unless he had to turn this way. But it is your recollection that

12

controls of the testimony.

(N.T. 1/22/98, at 4.11).

Petitioner's argument is unpersuasive. First, petitioner inaccurately understands Hilton's testimony to read that Hart's dogs were leashed. Hilton testified on direct and cross-examination that the dogs were not leashed and were walking ahead of Hart by several feet. Second, petitioner asserts that the medical examiner's testimony states that Hart was fully facing petitioner, based on the locations of the gunshot wounds. The medical examiner's report does not specify how Hart's body was positioned.

During its closing argument, the Commonwealth understood that there could be some ambiguity in Hart's physical position:

> At the point in time that Mr. Hilton observed the victim going by and he said to you that his back at that point would have been to – would have been away from shooter, he then focused on the shooter and the gun. Who is to say that at that point in time Mr. Hart, who was walking the dogs, couldn't have been turning around getting the dogs together or putting his milk back or any other number of reasons and turned his body position....We don't know how his body reacted once the shot hit. We don't know what other things may have distracted his attention or caused him to move or turn or shift his body position.

(N.T. 1/22/98 at 4.27-28). Likewise, as the excerpt of defense counsel's closing argument demonstrates, defense counsel was hoping that the jury might *infer* that Hart was facing petitioner during the altercation. It is a tenuous argument that the alleged inconsistencies within the statements made by the government's eyewitness during trial, the medical examiner's report, and petitioner's statement as reflected in his confession to police necessarily mean Hart was facing petitioner at the time he was shot.

The Supreme Court has made clear that it is "the responsibility of the trier of fact

fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Based on the above evidence presented at trial, a rational trier of fact could have understood Hilton's account and the coroner's report as not being inconsistent. Rather, the evidence can be interpreted together as showing that Hart walked away from petitioner, perhaps twisted or turned to handle his dogs, or to put down or pick up the milk carton he had been carrying, and was shot once and then again. The jury was not obliged to fully credit petitioner's confession, in which he stated that he shot Hart in self defense. Petitioner did not present other evidence at trial to boost his claim of self defense, and so the jury was free to assess the above evidence and make a determination as to whether petitioner acted out of malice, supporting a third degree murder conviction. We recommend that this second claim be denied.

### Claim Three

Next, petitioner argues that the court committed error when it allowed the jury to take petitioner's confession into the deliberation room. Petitioner contends that this prejudiced petitioner, as the jury "would place undue emphasis on that part of the evidence," and that evidence was fabricated. Petitioner acknowledges that this claim was never reviewed by the state courts, but argues that he asked PCRA counsel to raise this claim and PCRA counsel failed to do so. Petitioner asks that the court still review this unexhausted claim.

Respondents contend that this third claim is procedurally defaulted and cannot be reviewed by this court. Respondents argue that because this claim focuses on trial court error, it could have been raised on direct review. Alternatively, because there is a state right to effective assistance of PCRA counsel, respondents claim that petitioner could have raised PCRA counsel's

ineffectiveness to the state court, but never did. Respondents further assert that, to the extent that petitioner may invoke Martinez v. Ryan, 132 S.Ct. 1309 (2012), to use PCRA counsel's ineffectiveness to excuse the procedural default of his claim, Martinez does not apply.

While petitioner raised many claims of trial court error on direct appeal, petitioner failed to raise the trial court's error in permitting the jury to review the written confession made by petitioner.[5] Petitioner has not exhausted this claim and would be precluded from bringing this claim to the state courts for review now. Further, petitioner has failed to demonstrate that a miscarriage of justice would occur if this court were to refuse to review this claim on the merits. Thus, claim three is procedurally defaulted.

Petitioner, however, appears to argue that PCRA counsel should have raised this claim and failed to. Petitioner has not specifically cited Martinez, but in light of the recent ruling, we shall briefly discuss the Court's decision and whether it applies to the instant case.

While PCRA counsel's ineffectiveness historically has not satisfied the "cause" prong to excuse procedural default, Coleman v. Thompson, 501 U.S. 722, 752 (1991), the United States Supreme Court recently recognized a narrow exception to this. In Martinez, the Court held that in "initial-review collateral proceedings," where collateral review provides the first opportunity to litigate claims of ineffective assistance of appointed trial counsel, ineffective assistance of counsel can be "cause" for the procedural default. Id. at 1315-17. The Court cautioned that its holding did not apply to counsel's error in other kinds of proceedings, such as

---

[5]In his habeas petition and memorandum, petitioner discusses the confession in general, as if the jury was permitted to take the entire confession into the deliberation room. For clarification, the jury wanted to see the confession to compare petitioner's signature. (N.T. 1/23/98, at 4.71). The court stapled a blank piece of paper over the other parts of the statement and permitted the jury to see the signature line only. (N.T. 1/23/98, at 4.71-72).

appeals from initial-review collateral proceedings, second or successive collateral petitions, or petitions for discretionary review in state appellate courts. Id. at 1320. Its "equitable ruling" was designed to reflect the "importance of the right to effective assistance of counsel." Id. at 1320. In order to establish such "cause," counsel must have been ineffective under the standard set forth in Strickland, Id. at 1318. Further, petitioner must also demonstrate that the underlying ineffectiveness claim is "substantial" and has "some merit." Id.

Notably, the Court's ruling that PCRA counsel's ineffectiveness may serve as cause to excuse procedural default is limited to underlying claims of ineffective assistance of trial counsel. In claim three, petitioner alleges trial court error, not trial counsel error. For that reason, Martinez cannot save claim three from procedural default. We recommend that claim three of the instant petition be dismissed.

**Claim Four**

Petitioner asserts that the verdict was against the weight of the evidence. In his memorandum to his amended petition, petitioner argues that he believed Hart was reaching for a firearm, and so petitioner shot Hart. Petitioner further claims that the evidence shows that Hart was not shot from behind, and that this court should not find credible the testimony of Hilton and medical examiner McDonald. Petitioner contends that his confession that he shot Hart in self defense, as well as other evidence, should be given great weight.

Respondents argue that this court cannot review the weight of the evidence claim, as the claim requires an assessment of credibility, which the state courts already performed. Instead, respondents assert that this court must presume that the state courts' findings were correct.

Petitioner raised this claim on collateral review. The PCRA court found no merit to the weight of the evidence issue. (PCRA Ct. Op., 12/28/09, at 6). On review of the PCRA court's decision, the Superior Court also held that "the verdict does not shock one's sense of justice." (Superior Ct. Op., 9/9/10, at 10). The court explained that while the jury heard petitioner's statement that he shot Hart out of self-defense, the jury also heard the testimony of an eyewitness who said Hart had turned his back and walked away before petitioner fired his weapon. (Superior Ct. Op., 9/9/10, at 9-10). The court determined that the eyewitness's testimony effectively negated petitioner's claim of self defense. (Superior Ct. Op., 9/9/10, at 10).

As the Supreme Court has found, it is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. A weight of the evidence claim requires an evaluation of the credibility of the evidence presented at trial, and a state court's credibility findings are binding on a federal habeas court. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). As such, challenges to the weight of the evidence produced at trial are not cognizable in federal *habeas* proceedings. See Tibbs v. Florida, 457 U.S. 31, 42-45 (1982); see also Molina v. Lawler, 2008 WL 5054558, at *11 (E.D. Pa. Nov. 21, 2008); Alamo v. Frank, 1999 WL 79659, at *1 n.2 (E.D.Pa. January 15, 1999)("It is beyond the province of this court to consider the weight, as opposed to the sufficiency, of the evidence."). For these reasons, this court must presume that the state court's findings regarding Pennsylvania law on the weight of the evidence issue were reasonable. We recommend that claim four be denied.

**Claim Five**

In his final claim, petitioner claims that trial counsel was ineffective for failing to argue that the verdict was against the weight of the evidence. More specifically, petitioner claims he shot Hart in self defense.

Respondents argue that the state courts reasonably rejected this claim on the merits. The state courts determined that the underlying claim had no merit, and accordingly, counsel could not be ineffective for failing to raise the claim. Respondents further assert that the underlying claim –the weight of the evidence–is a matter of state law and cannot be reviewed by this court.

The Sixth Amendment to the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel. U.S. Const., amend. VI. The applicable federal precedent for ineffective assistance of counsel claims is the well-settled two-prong test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must prove that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In analyzing counsel's performance, the court must be "highly deferential." Id. at 689. The Court explained:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 76 S. Ct. 158, 163-64 (1955)).

A convicted defendant asserting ineffective assistance must therefore identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment. Id. at 690. The reviewing court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance." Id. Under Pennsylvania law, counsel is not ineffective for failing to raise baseless or frivolous issues. Commonwealth v. Wilson, 393 A.2d 1141, 1143 (Pa. 1978).

The second part of the Strickland test requires petitioner to demonstrate that counsel's performance "prejudiced the defense" by depriving petitioner of "a fair trial, a trial whose result is reliable." Id. at 687. To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Id. at 694.

If petitioner fails to satisfy either prong of the Strickland test, it is unnecessary to evaluate the other prong, as the petitioner must prove both prongs in order to succeed on his claim of ineffective assistance of counsel. If it is easier to dispose of an ineffectiveness claim for lack of the requisite prejudice, that course should be followed. Id. at 697.

In analyzing an allegation of ineffective assistance of counsel, the court must look first to the underlying claim. Here, petitioner contends that the verdict was against the weight of the evidence. As discussed above in our analysis of claim four, a challenge to the weight of the evidence is not cognizable on federal habeas review. See Tibbs, 457 U.S. at 42-45. While petitioner's ineffectiveness claim presents a constitutional challenge, the underlying weight of the evidence claim does not. This court is restricted to reviewing whether petitioner's conviction violated the federal Constitution, and cannot rule on issues of state law. Estelle v. McGuire, 502

19

U.S. 62, 67-68 (1991). As such, this court is bound by the state court's determination on the underlying claim. The state court found this claim meritless so counsel cannot be found ineffective for failing to raise the issue. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). We recommend that claim five of the instant petition be denied.

Therefore, I make the following:

RECOMMENDATION

AND NOW, this **7th** day of December, 2012, IT IS RESPECTFULLY RECOMMENDED that the petition for Writ of Habeas Corpus be DENIED AND DISMISSED. It is also RECOMMENDED that a certificate of appealability not be granted.

The petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Linda K. Caracappa
LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE

Note: Tricia A. Bozek, Esquire, contributed significantly to this Report and Recommendation.